1  Anthony R. Strauss, SBN 72842
   ars@strausslawgroup.com
2  **STRAUSS LAW GROUP**
   215 E. Oak St.
3  Ojai, CA  93023
   Tel: 805.641.9992
4

5  *Attorneys for Defendant A2 Railla Development, Inc.*

6

7

8               UNITED STATES DISTRICT COURT

9               CENTRAL DISTRICT OF CALIFORNIA

10

| FRANCISCO CORREA, an individual and on behalf of all others similarly situated, | Case No. |
|---|---|
| Plaintiff, | [Los Angeles County Superior Court Case Number: 22STCV25714] |
| v. | **NOTICE OF REMOVAL OF ACTION PURSUANT TO 28 U.S.C. §§ 1331, 1441, & 1446 [Federal Question]** |
| A2 RAILLA DEVELOPMENT, INC., a California corporation; SHANGRI-LA CONSTRUCTION, L.P., a California limited partnership; BUILD GROUP CONSTRUCTION COMPANY, INC., a California corporation; BUILD GROUP, INC., a California corporation; and DOES 1 through 100, inclusive, | |
| Defendants. | [State Court Complaint Filed: Aug. 9, 2022] |

1

**NOTICE OF REMOVAL OF ACTION**

TO THE CLERK OF THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA:

PLEASE TAKE NOTICE that Defendant A2 Railla Development, Inc. ("A2") hereby removes the matter of *Francisco Correa v. A2 Railla Development, Inc., et al.*, pending in the Superior Court of the State of California in and for the County of Los Angeles, Case No. 22STCV25714, to the United States District Court for the Central District of California pursuant to 28 U.S.C. §§ 1331, 1441(b), and 1446.

Removal is proper due to federal question jurisdiction under Section 301 of the Labor Management Relations Act of 1947 ("LMRA"), 29 U.S.C. § 152(2), 28 U.S.C. §§ 1331, 1441(b), and 1446, as discussed in detail below:

## I.     CLAIMS AND PROCEDURAL HISTORY

1.     On August 9, 2022, Plaintiff Francisco Correa ("Plaintiff"), individually and on behalf of all persons similarly situated, filed a Complaint in the Superior Court of California, County of Los Angeles, Case No. 22STCV25714 (the "Complaint").

2.     In the Complaint, Plaintiff asserts the following causes of action: (1) failure to pay overtime wages; (2) failure to pay minimum wages; (3) failure to provide meal periods; (4) failure to provide rest periods; (5) waiting-time penalties; (6) wage statement violations; (7) failure to timely pay wages; (8) failure to indemnify; and (9) unfair competition.

3.     The Complaint does not expressly enumerate any claim under federal law and omits that the terms and conditions of Plaintiff's employment were subject to a Collective Bargaining Agreement ("CBA").  A true and correct copy of the Complaint in this case is filed concurrently herewith as **Exhibit A**.[1]  Defendant A2 has not yet been formally served with the Complaint.  Declaration of James Devine in Support of Removal ("Devine Decl.") at ¶ 5.

---

[1] Defendants ask the Court to take judicial notice of the exhibits attached to this Notice of Removal, all of which are pleadings filed in the state court in this matter.

4. As of the date of this Notice of Removal, Defendants have not filed a responsive pleading to the Complaint.

5. Venue is proper in this Court pursuant to 28 U.S.C. §§ 84(c) and 1391.

## II.   TIMELINESS OF REMOVAL

6. The procedure for removal is set forth in 28 U.S.C. § 1446. Section 1446 states that the notice of removal must be filed within 30 days after a defendant receives a copy of the initial pleading. 28 U.S.C. § 1446(b). The Supreme Court in *Murphy Bros. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344 (1999), held that Section 1446(b)'s 30-day requirement to file a notice of removal begins upon formal service of process, not actual receipt of the complaint. *Id*. at 347-38.

7. Notwithstanding the fact that the 30-day deadline begins to run from actual service of the complaint, a defendant may remove the case before actual service. Section 1446 does not require a defendant to wait until formal service is complete to remove an action to federal court. *Novak v. Bank of New York Mellon Tr. Co.*, 783 F.3d 910, 913-14 (1st Cir. 2015) (holding "formal service is not generally required before a defendant may file a notice of removal" and collecting cases with similar holdings); *see also La Russo v. St. George's Univ. Sch. of Med.*, 747 F.3d 90, 97 (2d Cir. 2014); *In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig.*, No. 16-cv- 0219-CRB, 2019 WL 1551672, at *3 n.2 (N.D. Cal. Apr. 10, 2019); *Manor v. United of Omaha Life Ins. Co.*, No. 19-CV-02360-RS, 2019 WL 3413386, at *2 (N.D. Cal. July 29, 2019).

8. The removal of the Complaint is timely because the removing Defendant has not yet been formally served with the Complaint.

## III.   CONSENT TO REMOVAL

6. The Defendants to this matter are A2, Shangri-La Construction, L.P., Build Group Construction Company, Inc., and Build Group, Inc.

7. Only A2 removes the Complaint at this time. Lack of service is the reason the other defendants could not consent to removal at this time. Devine Decl. at ¶ 6.

## IV. FEDERAL QUESTION JURISDICTION BASED ON LMRA SECTION 301 PREEMPTION

6. This Court has original jurisdiction under 28 U.S.C. § 1331, and this case may be removed pursuant to the provisions of 28 U.S.C. § 1441(b), in that it is a civil action that presents a federal question.

7. Federal question jurisdiction arises out of the fact that Plaintiff's claims require interpretation of a CBA and thus are completely preempted by federal law under the LMRA. 29 U.S.C. § 185. Section 301 of the LMRA provides that: "[s]uits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce … may be brought in a district court for the United States having jurisdiction of the parties without regarding to the citizenship of the parties. *Firestone v. Southern Cal. Gas Co.*, 219 F.3d 1063, 1065 (9th Cir. 2000). To ensure uniform interpretations of CBAs, federal common law preempts the use of state contract law in collective bargaining agreement interpretation and enforcement. *See Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 411 (1988).

8. Further, all state law claims raised by a union-represented employee that require interpretation of a collective bargaining agreement must be brought pursuant to Section 301. "The preemptive force of section 301 is so powerful that it displaces entirely any state cause of action for violation of a collective bargaining agreement … any state claim whose outcome depends on analysis of the terms of the agreement." *Newberry v. Pac. Racing Ass'n*, 854 F.2d 1142, 1146 (9th Cir. 1988); *see Voorhees v. Naper Aero Club, Inc.*, 272 F.3d 398, 403 (7th Cir. 2001) (noting that section 301 is one of "only two areas in which the Supreme Court has found that Congress intended completely to replace state law with federal law for purposes of federal jurisdiction").

9. Section 301 specifically has been held to preempt California law claims that are substantially dependent upon interpretation of a collective bargaining agreement. *Firestone*, 219 F.3d at 1066-67. This is so even where interpretation was required to evaluate the employer's defense to a state law claim. *See Levy v. Skywaler Wound*, 108

Cal. App. 4th 753, 769 (2003) (claim for unpaid wages preempted because it "rest[ed] entirely" on a claim that plaintiff was "entitled … to wages at the level set by the CBA").

### A. Plaintiff's employment was governed by a CBA.

10. Plaintiff was an employee of Defendant A2 Railla Development Inc. ("A2"). Declaration of Andrew Railla in Support of Removal ("Railla Decl."), ¶ 3. Plaintiff performed services for A2 on the Washington View Apartments Project ("Project") between February 2021 and October 2021. *Id.* Plaintiff came to work for A2 on the Project as a referral by his union, the Southwest Regional Counsel of Carpenters, United Brotherhood of Carpenters and Joiners of America ("Union"). *Id.*, ¶ 3 and Ex. A.

11. The Class is broadly defined as, "[A]ll current and former non-exempt employees of Defendants within the State of California at any time commencing four (4) years preceding the filing of Plaintiff's complaint up until the time that notice of the class action is provided to the class (collectively referred to as 'Class Members')." Complaint at § 23. All of the Putative Class Members, including Plaintiff Correa, were represented by the Union on the Project. The terms and conditions of employment for Plaintiff and the putative Class Members were subject to a collective bargaining agreement. Railla Decl., ¶ 4. A2 is a signatory to the *Carpenters Memorandum Agreement Single Project Agreement* dated November 18, 2020, ("Memorandum"). *Id.*, ¶ 4, Ex. B (Memorandum). The Memorandum requires A2 "to comply with all of the terms, including wages, hours, and working conditions and rules… and any amendments, modifications, extensions and renewals" set forth in the *2016-2020 Southern California Carpenters Master Labor Agreement dated July 1, 2016* ("MLA"). *Id.*, Ex. B., § 1; *see also id.*, Ex. C (MLA). The MLA "shall apply to and cover all hours of employment of each employee" on a covered project. *Id.*, Ex. B., § 102.1. The MLA was extended through June 30, 2022 by the *Memorandum of Understanding* dated April 13, 2018 ("Extension"). *Id.*, ¶ 4; see also *id.*, Ex. D (Extension).

12. The Union is a labor organization within the meaning of Section 2(5) of the NLRA and 301(a) of the LMRA, 29 U.S.C. § 152(5) and 185(a).

13. A2 is an employer within the meaning of the LMRA, 29 U.S.C. § 152(2).

14. Article II of the MLA specifically states that the Union is the sole and exclusive collective bargaining representative of all employees and persons employed to perform work covered thereunder. *See* Ex. C at § 201.

### B. Plaintiff's claims are preempted by the LMRA because they require substantial interpretation of a CBA.

#### 1. Plaintiff's failure to reference section 301 of the LMRA in his Complaint does not preclude removal.

15. The Complaint omits the fact that Plaintiff was a member of the Union and employed by A2 through a CBA. However, a plaintiff may not be permitted to "artfully plead" his complaint to conceal the true nature of the complaint. *Young v. Anthony's Fish Grottos, Inc.*, 830 F. 2d 993, 997 (9th Cir. 1987) (holding that plaintiff's state law claim was preempted even though operative complaint made no mention of a collective bargaining agreement); *Schroeder v. Trans World Airlines, Inc.*, 702 F.2d 189, 191 (9th Cir. 1983), overruled in part on other grounds in *Moore-Thomas v. Alaska Airlines, Inc.*, 553 F.3d 1241 (9th Cir. 2009). Thus, the fact that Plaintiff has not made specific reference to section 301 in his Complaint does not preclude removal. *See Milne Employees Ass'n v. Sun Carriers, Inc.*, 960 F.2d 1401, 1406 (9th Cir. 1991). The Court may properly look beyond the face of the Complaint to determine whether the claims asserted are in fact preempted by section 301. *See Lippitt v. Raymond James Fin. Servs., Inc.*, 340 F.3d 1033, 1041 (9th Cir. 2003). Additionally, the Court may properly look to the facts stated in the Notice of Removal "to clarify the action a plaintiff presents and to determine if it encompasses an action within federal jurisdiction." *Schroeder*, 702 F.2d at 191.

16. An artfully pled state law claim is properly "recharacterized" as a federal claim under the "complete preemption" doctrine, which provides that the preemptive force of section 301 "converts an ordinary state law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule" and is removable to federal court.

*Caterpillar Inc. v. Williams*, 482 U.S. 386, 393 (1987); *Franchise Tax Bd. v. Construction Laborers Vacation Trust*, 463 U.S. 1, 23 (1983) ("[I]f a federal cause of action completely preempts a state cause of action, any complaint that comes within the scope of the federal cause of action necessarily 'arises' under federal law.").

17. The claims asserted in Plaintiff's Complaint are "founded directly on rights created by collective bargaining agreements" and/or are substantially dependent on an analysis and interpretation of a collective bargaining agreement. *See Hayden v. Reickerd*, 957 F.2d 1506, 1509 (9th Cir. 1991); *see also Caterpillar Inc.*, 482 U.S. at 394. To analyze Plaintiff's claims, therefore, the Court will necessarily need to interpret the provisions of the relevant CBAs.

### 2. Resolution of Plaintiff's claims will require substantial interpretation of various provisions of the relevant CBA.

18. The Court cannot simply look to state law to resolve Plaintiff's artfully pled claims for breach of a CBA. Thus, Plaintiff's claims cannot be adjudicated without interpretation of numerous CBA provisions that governs his employment. Plaintiff asserts the following claims: (1) failure to pay overtime wages; (2) failure to pay minimum wages; (3) failure to provide meal periods; (4) failure to provide rest periods; (5) waiting-time penalties; (6) wage statement violations; (7) failure to timely pay wages; (8) failure to indemnify; and (9) unfair competition.

19. The applicable CBA contains specific language governing time worked, wages, overtime (including specific language regarding pay for time worked in excess of eight in a day), and meal and rest periods. The CBA also provides for a grievance process and require binding arbitration to resolve any disputes arising under the CBAs, including any allegation of a violation of Wage Order 16. Resolution of Plaintiff's claims will require the Court to interpret, at a minimum all of these provisions:

20. **Wages, Hours, and Overtime.** Plaintiff seeks overtime under Labor Code sections 510, 1194, and 1199, and the applicable Wage Order. His overtime claim (first cause of action) alleges that Plaintiff and the putative Class Members "worked in excess

of eight hours in a day and/or more than 40 hours in a workweek, and/or seven (7) consecutive workdays in a workweek, without being paid overtime wages for all hours worked." Complaint at § 37.  Defendants allegedly failed "to accurately track and/or pay for all hours actually worked at the proper overtime rate of pay"; engaged, suffered, or permitted employees "to work off the clock, including, without limitation, by requiring employees to complete pre-shift tasks before clocking in and post-shift tasks after clocking out, to clock out for meal periods and continue working, [and] to make phone calls of the clock"; failed "to include all forms of remuneration, including piece rate compensation, non-discretionary bonuses, incentive pay, meal allowances, and other forms of remuneration into the regular rate of pay for the workweeks in which overtime was worked"; detrimentally rounded employee time entries, which Defendants allegedly manipulated to show fewer hours than actually worked; and paid straight-time pay for overtime hours. *Id.*  Plaintiff brings his claim under Labor Code sections 510, 1194, 1199, as well as the applicable Wage Orders. *Id.* at ¶ 34.  The CBA sets forth the parties' mutual agreement regarding all issues pertaining to employee wages, including but not limited to pay for overtime.  For example, the MLA specifies that the workday consists of an eight-hour period between 5:00 a.m. and 5:00 p.m., and that the workweek is 40 hours between Monday at 5:00 a.m. and Friday at 5:00 p.m.  Railla Decl., Ex. C at § 1602.1.  The Memorandum establishes shift starting times. *Id.*, Ex. C at § 1602.1.  It states that any work performed before 5:00 a.m. or after 5:00 p.m., or all time worked in excess of eight (8) hours in a day, and all work performed or hours paid on Saturdays, Sundays and holidays, shall be paid at the appropriate overtime rates. *Id.*, Ex. C at §§ 1602.3, 1805.  The Extension revises these definitions of the workday. *Id.*, Ex. D at 4-5.

   21. **Meal Periods.**  Plaintiff makes a claim for denied meal periods under Labor Code section 512 and the applicable Wage Order.  Complaint at ¶ 47.  The CBA provides for meal periods, and expressly lays out the conditions under which employees are entitled to such breaks.  Railla Decl., Ex. C at § 903, Ex. D at 4-5.

22. **Wage Rates.** The CBA establishes wage rates for covered employees, such as Plaintiff and the putative Class Members. The lowest wage rate for covered employees is $27.98 per hour. Railla Decl., Ex. C at § 1801. The current minimum wage is $15 per hour. Lab. Code § 1182.12(b)(1)(F). Thus, the wage rates set by the CBAs are more than 30 percent greater than the state minimum wage.

23. **Working Conditions.** The CBAs govern the working conditions of covered employees. *See* Railla Decl., Ex. C at §§ 501-508.

24. **Incorporation of Wage Order 16.** Plaintiff's causes of action involving overtime wages (1st cause of action), minimum wages (2nd), meal periods (3rd), rest periods (4th), waiting-time penalties (5th), wage statements (6th), untimely payment of wages (7th), and expense reimbursements (8th) each allege that Defendants violated the applicable wage order. Complaint at ¶¶ 38, 42-43, 51, 59, 63, 71, 79, and 86. The CBAs cover these issues. For example, the Memorandum states that the applicable wage order is Wage Order 16, and that "any alleged violation of Wage Order 16 shall constitute a grievance, which shall be recognized under the grievance procedure of this Agreement." Railla Decl., Ex. B at § 904. California Labor Code sections 512 and 514 and Wage Order 16 provide that overtime, alternate workweek, reporting time, and meal and rest period requirements <u>do not apply</u> to employees covered by a valid CBA, so long as the CBA provides wages, hours of work, working conditions, and premium wage rates for all overtime hours worked; and wages for all regular hours worked are not less than 30 percent more than the state minimum wage. Lab. Code §§ 512(e)-(f), 514; 8 Cal. Code Regs. §§ 11160(3)(H), (5)(D), (10)(E), (11)(E). Here, the CBA meets those criteria: it provides for wages, hours and working conditions; and specifically calls for and defines premium pay for all overtime hours worked. The CBA also expressly establishes wage rates in excess of 30 percent above the state minimum wage. As a result, the CBAs here <u>must be interpreted</u> to resolve Plaintiff's claims. *Curtis v. Irwin Indus., Inc.*, 913 F.3d 1146, 1155 (9th Cir. 2019) (because the Labor Code section 514 exemption applies,

plaintiff's right to overtime exists solely as a result of the CBA; therefore, the overtime claim is preempted under section 301).

25. **Grievance and arbitration procedure.** Additionally, applying the CBA in conjunction with Labor Code sections 512 and 514 and Wage Order 16, the grievance and arbitration procedure set forth in the CBA covers disputes such as those here. "Any alleged violation of Wage Order 16 shall constitute a grievance, which shall be recognized under the grievance procedure of this Agreement." Railla Decl., Ex. C at § 904. Breaches of the CBA are to be submitted to binding arbitration under the terms of the Memorandum. Railla Decl., Ex. B, § 5. Any alleged non-contractual violations of the California Labor Code, including without limitation, the provisions of Wage Order 16, are to be arbitrated pursuant to the terms of the Extension. *Id.*, Ex. D at 2-3. Regardless of which arbitration procedure is to be used, whether under the terms of the Memorandum or Extension, both arbitration procedures provide for final and binding arbitration. *Id.*, Ex. B, § 5(b); Ex. D at 4:21-22.

26. The promotion of extra-judicial dispute resolution is another purpose of section 301 preemption. State court lawsuits properly removed on preemption grounds may then be deferred to arbitration, if the parties to the CBA have so agreed. *See Livadas v. Bradshaw*, 512 U.S. 107, 142, fn. 18 (1994). Here, the parties <u>have</u> so agreed, and the claims are therefore subject to arbitration as discussed above. Accordingly, an alleged violation of the CBA, or of Wage Order 16, is subject to the grievance and arbitrations set forth therein. As all of Plaintiff's claims are in essence alleged violations of the relevant CBAs (and/or of Wage Order 16), the Court will necessarily have to interpret the grievance and arbitration provisions to analyze Plaintiff's claims in this case. That is, the Court will be required to determine whether Plaintiff was first required to exhaust the grievance procedures, whether he did in fact exhaust those procedures, whether he agreed to arbitrate all or some of his claims, and whether Plaintiff is exempt from any and all claims by virtue of the exemptions set forth in Labor Code sections 512 and 514 – which are all questions reserved for federal courts under the LMRA.

27. Accordingly, Plaintiff's claims are substantially dependent upon the interpretation of the foregoing CBA terms and provisions. In fact, those terms and provisions govern nearly all of the conduct which forms the basis for Plaintiff's Complaint, and thus are essential to the resolution of Plaintiff's claims. Accordingly, most, if not all, of Plaintiff's claims arise under section 301 of the LMRA and are therefore preempted by federal law. Removal to federal court is warranted.

### V. SUPPLEMENTAL JURISDICTION

28. The Court has supplemental jurisdiction over any of Plaintiff's remaining state law claims to the extent they are not completely preempted by section 301 or are not so inextricably intertwined with or dependent on an interpretation of the CBA, because they related to and emanate from the same employment relationship between Plaintiff and Defendants that is the subject of the federal question claims. All the pleaded claims thus emanate from and form part of the same "case or controversy," such that they should all be tried in one action. *See Nishimoto v. Federman-Backrach & Assoc.*, 903 F.2d 709, 714 (9th Cir. 1990). Considerations of convenience, judicial economy, and fairness to the litigants strongly favor this Court exercising jurisdiction over all claims in the Complaint. *See Executive Software v. U.S. Dist. Court*, 24 F.3d 1545, 1557 (9th Cir. 1994). Accordingly, by virtue of 28 U.S.C. § 1441, Defendants are entitled to remove all of Plaintiff's claims to this Court.

### VI. JOINDER

29. Defendant A2 is not aware of any other defendant that exists and who has been named in the Complaint or who has been served with a summons and the Complaint. *See* Ex. A; Devine Decl., ¶¶ 4-6.

### VII. NOTICE TO PLAINTIFF

30. Contemporaneously with the filing of this Notice of Removal in the United States District Court for the Central District of California, written notice of such filing will be served on Plaintiff's counsel of record, David D. Bibiyan, Jeffery D. Klein, and Alexander D. Wallin, at Bibiyan Law Group, P.C., 8484 Wilshire Blvd., Ste 500, Beverly

Hills, California 90211. In addition, a copy of this Notice of Removal will be filed with the Clerk of the Court for the Superior Court of the County of Los Angeles.

31. In compliance with 28 U.S.C. § 1446(a), Defendant cannot file herewith true and correct copies of all "process, pleadings, and orders" from the state court action served on Defendants, because nothing has been served yet on A2.

WHEREFORE, having provided notice as is required by law, the above-entitled action should be removed from the Superior Court for the County of Los Angeles to this Court.

Date: September 30, 2022　　　**STRAUSS LAW GROUP**

　　　　　　　　　　　　　　By: */s/ Anthony R. Strauss*
　　　　　　　　　　　　　　　　Anthony R. Strauss
　　　　　　　　　　　　　　　　Attorneys for Defendant A2 Railla Development, Inc.